UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICHARD RAMIREZ,                                    **COMPLAINT**

                                                                   16 cv 4174
                                                                   ECF Case

          Plaintiff,
   vs.

The CITY OF NEW YORK, POLICE OFFICERS
DWIGHT POWELL, JAMES BURKE, and
SERGEANT NOEL GUTIERREZ,
in their individual and official capacities,            **JURY TRIAL DEMANDED**

                   Defendants.
-----------------------------------------------------------x

Plaintiff Richard Ramirez, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the First Amendment retaliation and unlawful search and seizure of Richard Ramirez ("Plaintiff"), a law-abiding citizen who was on his way home one night when he was baselessly and maliciously detained, interrogated, and searched by plain-clothes officers who refused to identify themselves. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for First Amendment retaliation, illegal search and seizure, excessive force, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable federal civil rights law.

## JURISDICTION

1

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and The First and Fourth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff Richard Ramirez is a United States citizen, resident of Manhattan, driver for the company Uber, and a law-abiding citizen with no criminal record.

6. The individually named defendants Police Officer James Burke ("PO Burke"), Police Officer Dwight Powell (Shield # 9038) ("PO Powell"), and Sergeant Noel Gutierrez (Shield # 5149) ("Sgt. Gutierrez") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the 33rd Precinct and the Manhattan North Gang Squad.

8. Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law,

in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

10. Around 2:15 a.m. on October 23, 2015, Plaintiff took a livery car to his home at 3675 Broadway in upper Manhattan, New York City.

11. Plaintiff had spent the evening with his friend Gabriel Mercado, socializing and playing videogames in Mr. Mercado's apartment on Amsterdam Avenue and 176 Street in upper Manhattan, twenty-four blocks north of Plaintiff's apartment.

12. The livery car driver (the "Driver") who took Plaintiff home that evening drove safely, obeyed all traffic rules, and parked in front of Plaintiff's apartment building.

13. After paying the Driver, Plaintiff opened the rear passenger door. As he was about to leave the car, Plaintiff suddenly felt the door aggressively pushed back on him by PO Powell, forcing him back into the car.

14. Plaintiff noticed three men – the individual defendants, wearing plain clothes, bearing no indications of being police officers – surrounding the car, flashing their flashlights in Plaintiff's face.

15. The individual defendants had decided to detain and question the occupants of the livery car, baselessly assuming something was awry.

16. While PO Burke was near the Driver, PO Powell and Sgt. Gutierrez were at the rear of the car by Plaintiff.

17. PO Powell and Sgt. Gutierrez ordered Plaintiff to remain in the vehicle.

18. Plaintiff complied with this order.

19. Plaintiff noticed that Sgt. Gutierrez was armed with a gun. Fearful of his safety, not wanting to get shot, Plaintiff turned on the interior lights of the taxi and kept his hands in the air.

20. The individual defendants questioned Plaintiff through the open window, asking him where he was coming from, what neighborhood he was from, what he was doing on the block, whether he had paid the Driver.

21. Plaintiff, scared for his life, answered all questions politely and truthfully, informing the individual defendants that he lived on the block and was returning home after hanging out with a friend that evening.

22. Plaintiff further informed the individual defendants – and the Driver confirmed – that he had paid the full car fare.

23. When Plaintiff asked the individual defendants what the problem was, they replied that the Driver made an illegal turn at 152nd Street. Plaintiff said this was impossible given the route the Driver had taken.

24. Plaintiff then asked why he was being detained and questioned if this was merely a traffic stop, but he received no answer to this valid question.

25. Plaintiff also asked if he could show his ID to the officers to prove that he lived on this block, but they responded that they did not want to see his ID at this point.

26. Plaintiff said that he needed to work in the morning and asked if he could be let go to his nearby apartment, but the individual defendants would not let Plaintiff go.

27. Uncertain about who these men were, Plaintiff asked if he could see the badges of the individual defendants to find out if they were in fact police officers, but they refused to do so.

28. Plaintiff's questions – though polite and non-threatening – did not please the individual defendants, who expected Plaintiff to be docile, unquestioning, silent.  Several times they told Plaintiff to "shut the [expletive] up."

29. Because of Plaintiff's willingness to ask questions, to question the officers' conduct, the individual defendants decided to prolong the detention and step up their intrusiveness, to humiliate Plaintiff and teach him a lesson.

30. After about fifteen minutes of being detained in the car, Plaintiff was ordered to step out of the car.

31. Plaintiff, who still had his hands in the air, asked that the individual defendants open the door because he wanted his hands to remain visible, fearing that Sgt. Gutierrez – who menacingly kept his hand on his gun – would shoot him if he could not see Plaintiff's hands.

32. PO Powell opened the car door, and Plaintiff stepped out of the vehicle.

33. As soon as Plaintiff stepped out, PO Powell used his chest to push Plaintiff against the car.

34. Plaintiff was asked if he had any weapons or drugs, and Plaintiff truthfully denied possessing anything illegal or dangerous.

35. Plaintiff had a vape pen, which PO Burke seized, smelled, and gave back because it contained absolutely nothing unlawful.

36. When Plaintiff was ordered to turn around and spread his legs so the officers could frisk his body, Plaintiff replied that he did not consent to the search.

37. After saying this, Plaintiff noticed Sgt. Gutierrez – who was standing by PO Powell – reach for his gun, appearing to un-holster it.

38. Upon observing Sgt. Gutierrez reach for his gun, Plaintiff immediately turned around, placed his hands on the car, and spread his legs.

39. PO Powell aggressively patted, frisked, and groped Plaintiff's body, closely probing Plaintiff's groin and chest.

40. Nothing unlawful, wrongful, or suspicious was found on Plaintiff.

41. PO Powell then demanded Plaintiff's ID.

42. Plaintiff complied, handing his New York State driver license, which confirmed that Plaintiff in fact lived on the block.

43. PO Powell handed the driver license to PO Burke, who checked to see if there were any warrants for Plaintiff's arrest.

44. No warrants for Plaintiff's arrest existed.

45. When the individual defendants handed Plaintiff's license back to him, they said they would let him go but admonished him not to be "disrespectful" to police.

46. Plaintiff, who respects police and even served as a young man on the NYPD Explorer Program, was never disrespectful toward the individual defendants.

47. The individual defendants ignorantly perceived Plaintiff's willingness to ask legitimate questions as "disrespect."

48. Plaintiff again asked for the identities of the individual defendants, but they would not give Plaintiff their names.

49. When Plaintiff asked again to see their badges, they told him that they're "not showing shit."

50. The individual defendants walked back to their unmarked car, refusing to reveal their names or badge numbers.

51. As they were getting in their police cruiser, the individual defendants falsely told Plaintiff he could find them at the "23rd Precinct." They were in fact from the 33rd Precinct.

52. Because the individual defendants would not identify themselves, Plaintiff took a photograph of the New York license plate from their car – FMT 3903.

53. Plaintiff was detained for about forty minutes before the individual defendants walked off to their car.

54. Despite the claim that the Driver took an improper turn, no traffic ticket was issued to him.

55. As a result of the defendants' conduct, Plaintiff suffered mental distress and emotional anguish.

56. Plaintiff was so upset and distraught that he could not sleep, staying awake to write a statement of what had just happened to him.

57. As a result, Plaintiff could not go to work as an Uber driver when it became light outside, losing about $300 in wages that day.

58. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

59. There is a systemic failure to identify, discipline, and supervise NYPD officers who abuse their power, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

60. There is a gross deficiency in training NYPD officers on the First Amendment – the right of citizens to express themselves lawfully. Because of the poor training on freedom of expression, NYPD officers are unable to distinguish between protected speech and unprotected speech, between merely inconvenient forms of speech and illegal forms of speech, between lawful inquiries and unlawful threats.

61. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the First and Fourth Amendments to the United States Constitution;

    b. Severe emotional trauma, distress, degradation, and suffering;

    c. Loss of income.

## SECTION 1983 CLAIMS

## FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

62. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

63. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

64. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the First and Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

65. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First and Fourth Amendment of the United States Constitution.

66. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Illegal Seizure Under Section 1983

67. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

68. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable seizures.

69. As detailed above, the individual defendants intentionally stopped, questioned, and detained Plaintiff without reasonable suspicion, and without privilege or consent.

70. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Illegal Search Under Section 1983

71. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

72. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from unlawful searches.

73. Without probable cause, a warrant, or consent, the individual defendants searched Plaintiff's person, where Plaintiff had a reasonable expectation of privacy.

74. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### First Amendment Retaliation Under Section 1983

75. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

76. By the actions described, the individual defendants retaliated against Plaintiff because he lawfully exercised his First Amendment right to free speech – detaining him, treating him roughly, and searching him for questioning the conduct of the individual defendants and asking their identities. In doing so, the individual defendants chilled Plaintiff's exercise of his right to free speech.

77. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

78. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

80. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

81. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SIXTH CLAIM

**Excessive Force Under Section 1983**

82. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

83. By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

84. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SEVENTH CLAIM

**Municipal Liability Under Section 1983**

85. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

86. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment rights through its failure to train, supervise, and discipline mendacious and malicious officers; through its fostering a culture of abuse among those who wield considerable power over the lives of everyday citizens; and though its failure to train officers on the First Amendment rights of New Yorkers.

87. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

  a. An order awarding compensatory damages for Plaintiff Richard Ramirez in an amount to be determined at trial;

  b. An order awarding punitive damages in an amount to be determined at trial;

  c. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

  d. Such other and further relief as this Court may deem appropriate.

DATED: June 5, 2016    _____s/_____
     New York, New York CYRUS JOUBIN, ESQ.
               43 West 43rd Street, Suite 119
               New York, NY 10036
               (703) 851-2467
               joubinlaw@gmail.com
               Attorney for Richard Ramirez