UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD RAMIREZ,

                 Plaintiff,

- against -

CITY OF NEW YORK, DWIGHT POWELL, *individually and in his official capacity*, JAMES BURKE, *individually and in his official capacity*, and NOEL GUTIERREZ, *individually and in his official capacity*,

                 Defendants.

**OPINION AND ORDER**

16 Civ. 4174 (ER)

Ramos, D.J.:

      On June 5, 2016, Richard Ramirez ("Ramirez" or "Plaintiff") brought this lawsuit against Police Officer Dwight Powell ("Powell"), Police Officer James Burke ("Burke"), Sergeant Noel Gutierrez ("Gutierrez"), and the City of New York (the "City") (collectively, "Defendants"). *See* Doc. 1. Ramirez brought several claims relating to his detention by police officers in the early morning of October 23, 2015, which lasted for approximately 40–45 minutes. *Id.*; *see also* Plaintiff's Affirmative Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Add'l 56.1") (Doc. 63) ¶¶ 36, 64. Ramirez now moves for partial summary judgment based on a five minute portion of his detention, and Defendants move for summary judgment on all claims. *See* Docs. 43, 52. Ramirez also moves for leave to amend his complaint to add an additional claim for *Monnell* liability based on the City's alleged procedure regarding warrant checks. *See* Doc. 46. For the following reasons, Ramirez's motions are GRANTED and Defendants' motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND[1]

On October 22, 2015, Ramirez visited his friend Gabriel Mercado ("Mercado") for Mercado's birthday. Pl.'s Add'l 56.1 ¶ 1. As a gift, Ramirez brought Mercado a black jacket identical to the one he was wearing. *Id.* ¶ 2. After having a drink with Mercado, Ramirez left at approximately 1:00 a.m. on October 23, 2015. *Id.* ¶¶ 4–5. Ramirez walked back to his apartment approximately twenty-five blocks away and realized that he was accidentally wearing Mercado's new jacket and not his own. *Id.* ¶¶ 5–6. Ramirez walked all the way back to Mercado's and hailed a cab home around 2:00 a.m. after making the exchange. *Id.* ¶¶ 7–9.

After Ramirez arrived at home and paid the taxi driver, he attempted to exit the car but felt the door push back on him. *Id.* ¶ 11. Three men—Defendants Burke, Powell, and Gutierrez—were surrounding the car, flashing lights into Ramirez's face. *Id.* ¶ 12. Unbeknownst to Ramirez at the time, they were police officers wearing plain clothes who were assigned to the 33rd Precinct. *Id.* ¶ 13. The officers stopped the cab due to a traffic infraction the driver committed on 155th Street, a few blocks from Ramirez's address. *Id.* ¶ 16.[2]

When the officers first encountered Ramirez, he was sweating profusely, which he explained by saying that he had just walked sixty blocks. Defendants' Rule 56.1 Statement in

---

[1] The following facts are drawn from Plaintiff's Rule 56.1 Statement in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s 56.1") (Doc. 49), Defendants' Responsive Rule 56.1 Statement in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defs.' Opp. 56.1") (Doc. 54), Defendants' Rule 56.1 Statement in Support of Defendants' Motion for Summary Judgment ("Defs.' 56.1") (Doc. 55), Plaintiff's Responsive Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp. 56.1") (Doc. 62), Plaintiff's Affirmative Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Add'l 56.1") (Doc. 63), Defendants' Reply 56.1 Statement in Support of Defendants' Motion for Summary Judgment ("Defs.' Reply 56.1") (Doc. 70), and the parties' supporting submissions. Any citation to the parties' 56.1 Statements incorporates by reference the documents cited therein.

[2] According to Officer Powell, the taxi was speeding and the officers could not stop the car until it stopped between 153rd Street and 152nd Street to drop Ramirez off. Pl.'s Add'l 56.1 ¶ 17. By contrast, according to Officer Burke, the taxi made an improper left turn at 155th Street, but the officers did not stop the vehicle until it reached 153rd Street because the cemetery between 155th Street and 153rd Street was dark and created a safety issue. *Id.* ¶ 18. Sergeant Gutierrez did not notice any traffic infractions. *Id.* ¶ 19. Ramirez, on the other hand, testified that the taxi never even drove across or on 155th Street. *Id.* ¶ 20.

Support of Defendants' Motion for Summary Judgment ("Defs.' 56.1") (Doc. 55) ¶¶ 1–2. Officer Burke asked the driver if Ramirez had paid his fare, and the driver replied that he had. Pl.'s Add'l 56.1 ¶ 15. Ramirez told the officers that he lived in the building the taxi was parked in front of and asked to be allowed to leave. *Id.* ¶ 23. In response, Sergeant Gutierrez told Ramirez to "shut the [expletive] up." *Id.* ¶ 24.[3] Ramirez asked if he could show the officers his ID to prove that he was simply trying to go home. *Id.* ¶ 26. The officers asked if Ramirez was actually in the neighborhood to buy drugs. *Id.* ¶ 27.[4] Ramirez replied that he was just trying to go home, had no interest in drugs, and was willing to present his ID to clear up any confusion. *Id.* ¶ 28. Ramirez then asked to see the officers' badges and was told, for a second time, to "shut the [expletive] up." *Id.* ¶ 31.

Fearful of being shot, Ramirez turned on the interior light in the taxi and raised his hands. *Id.* ¶ 32. In fact, Ramirez kept his hands up throughout the entirety of the encounter, including after the officers asked him why he didn't put his hands down. Defs.' 56.1 ¶ 3; Plaintiff's Responsive Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp. 56.1") (Doc. 62) ¶ 3. Officer Powell then ordered Ramirez out of the car. Pl.'s Add'l 56.1 ¶ 34. Ramirez asked Officer Powell to open the door for him, and exited the taxi when Officer Powell complied with his request. *Id.* ¶¶ 35–36. By the time Ramirez exited the car, he had already been detained for twenty minutes. *Id.*

---

[3] Defendants deny this statement, but they do not point to any evidence in the record to support their denial. *See* S.D.N.Y. Local Civ. R. 56.1(d) ("Each [56.1] statement by the movant or opponent pursuant to Rule 56.1(a) and (b), *including each statement controverting any statement of material fact*, must be followed by citation to evidence which would be admissible . . . .") (emphasis added). If a party fails to properly controvert a fact in the moving party's 56.1 statement, it is deemed admitted. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

[4] In their depositions, however, Officer Powell stated that he did not suspect that Ramirez had drugs, and Officer Burke said that there was no odor of marijuana in the car. *Id.* ¶¶ 29–30.

3

Outside the car, Officer Powell used his chest to push Ramirez against the car. Defs.' 56.1 ¶ 7. The officers the ordered Ramirez to turn around and so he could be frisked. Pl.'s Add'l 56.1 ¶ 39. Ramirez initially said that he did not consent to the search, but upon observing Sergeant Gutierrez reach for his gun and hearing Officer Powell and Sergeant Gutierrez say, "turn the [expletive] around," he complied. *Id.* ¶¶ 40–42. Officer Powell then frisked Ramirez and in the process of doing so, groped Ramirez's chest and genital area. *Id.* ¶¶ 43, 45.[5] Officers Burke and Gutierrez observed the frisk and did not stop it, nor did Ramirez actively resist, despite his extreme discomfort. *Id.* ¶¶ 44, 46. Nothing unlawful or dangerous was found, although Ramirez did have a vaporizer pen (more commonly known as a vape pen or e-cigarette). *Id.* ¶¶ 48–49.

Officer Powell next asked for Ramirez's identification. *Id.* ¶ 50. Ramirez complied. *Id.* ¶ 51. Officer Powell gave the identification to Officer Burke, who ran a warrant check, which took approximately five minutes but returned no arrest warrants for Ramirez. *Id.* ¶¶ 54, 58–59.[6] During that five minute period, Officer Powell and Sergeant Gutierrez remained with Ramirez while Officer Burke conducted the search in the officers' car. *Id.* ¶¶ 54, 57. Sergeant Gutierrez later testified that he knew Officer Burke was running a warrant check. *Id.* ¶ 55.

When asked at his deposition why he ran a warrant check, Officer Powell stated that it was "procedure." *Id.* ¶ 56. After the warrant check, the officers got in their car, and Officer Powell told Ramirez, "Next time stop disrespecting us and next time you won't get treated like that." *Id.* ¶ 63. Ramirez asked for the officers' names, which they refused to provide. *Id.* ¶ 68.

---

[5] At some point after the encounter on October 23, 2015, Officer Powell filled out a form UF-250 in which he wrote information about Ramirez's frisk, including the duration and reason for the stop. *Id.* ¶ 71. However, Defendants have been unable to locate the UF-250 and believe it was destroyed. *Id.* ¶ 72.

[6] When the officers initially stopped the taxi, they checked the driver's license to make sure it was valid, but they did not conduct any checks of the license or write down the driver's information. Pl.'s 56.1 ¶ 10. He did not receive a traffic ticket or citation. Pl.'s Add'l 56.1 ¶ 66.

Ramirez also asked for the precinct in which the officers worked, and they incorrectly stated that they worked at the 23rd Precinct. *Id.*[7] The officers then drove away without issuing a ticket or citation to Ramirez. *Id.* ¶¶ 62, 67. At that point Ramirez had been detained outside the car for twenty-five minutes, and the entire duration of the encounter was forty to forty-five minutes long. *Id.* ¶ 64.

The officers later testified that they found Ramirez to be "belligerent." *See* Declaration of Cyrus Joubin dated March 19, 2018 (Doc. 61) Ex. C ("Gutierrez Dep.") at 81:11–14; *see also id.* at 94:24–25 ("He was being loud, causing a scene."); Ex. D ("Powell Dep.") at 109:22–23 ("He was yelling. Um, being combative."), 110:5–6 ("He started cursing, acting rambunctious."), 153:15–16 ("I would say [Ramirez was being] more like disrespectful."). According to Sergeant Gutierrez, Ramirez kept saying that he was not obligated to show the officers anything, which he knew because he used to be an auxiliary police officer. Gutierrez Dep. at 81:11–14; *see also* Powell Dep. at 109:6–9. Officer Powell's decision to frisk Ramirez stemmed from the fact that he perceived Ramirez's behavior to be non-compliant and combative. Powell Dep. at 110:14–24 ("I proceeded to frisk him for my safety, just to make sure . . . that he did not have any weapons on him. Because like I said, uh, he was very un-compliant, very combative . . . in the manner that he was acting. I wanted to make sure that he did not have any weapons that could harm me or the guys that I was with.").[8]

---

[7] Defendants deny they made these statements, but do not support their denial with any admissible evidence. *See supra* note 3.

[8] Later in his deposition, Officer Powell stated that he noticed a "bulge" in Ramirez's coat, and when he later frisked Ramirez, he uncovered the vaporizer pen there, which he initially mistook for a weapon. *Id.* at 126:20–127:11. In his 2015 interview before the Civilian Complaint Review Board (pre-dating his deposition), Officer Powell said that he observed a bulge in Ramirez's pocket but that it was not "too alarming" and that Ramirez made no threatening gestures, but was instead "being vulgar," "yelling," and "causing unnecessary attention." Joubin Decl. Ex. 8.

On June 5, 2016, Ramirez filed the instant complaint. He raised seven claims under Section 1983: (1) deprivation of federal civil rights, (2) illegal seizure, (3) illegal search, (4) First Amendment retaliation, (5) failure to intervene, (6) excessive force, and (7) *Monell* liability. *See* Compl. ¶¶ 62–87.[9] Ramirez has moved for partial summary judgment on his second and third claims, based on an alleged constitutional violation that occurred during a five minute period of his detention while the Defendant officers ran a warrant check. *See* Doc. 43. Ramirez also seeks to add an additional claim for *Monell* liability based on that same alleged violation. *See* Doc. 46. Defendants oppose both motions and have moved for summary judgment on all Ramirez's claims. *See* Doc. 52.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it

---

[9] Neither Ramirez nor Defendants meaningfully differentiate between Ramirez's second and third claims for "illegal search" and "illegal seizure" in their papers. The Court therefore analyzes them as one in this opinion. The Court also discusses Ramirez's claims for derivative liability (his fifth and seventh claims) while addressing the underlying alleged constitutional violations.

might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

**B.     Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Fed. R. Civ. P. 15. Under Section 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed that the "liberal spirit" of Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits." 797 F.3d 160, 190–91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)).

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g.*, *Allison v. Clos-ette Too, L.L.C.*, 14 Civ. 1618 (LAK) (JCF), 2015 WL 136102 at *2 (S.D.N.Y. Jan. 9, 2015). The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Constitutionality of Warrant Check

Ramirez argues that he is entitled to partial summary judgement on his second and fifth claims, for illegal seizure under Section 1983 and failure to intervene, based on the warrant check that was conducted by Officer Burke and observed by Sergeant Gutierrez and Officer Powell. *See* Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Mem.") (Doc. 45), at 1, 8. According to Ramirez, whether his interaction with the officers is viewed through the lens of a traffic stop or a *Terry* stop, the officers' actions were plainly unconstitutional. *Id.* at 6.[10] This Court is guided by the Supreme Court's analysis in *Rodriguez v. United States*:

> [T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

---

[10] In the context of a *Terry* stop, an officer may only detain an individual if there is a reasonable suspicion that he "is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Defendants do not contend that at the time the officers ran the warrant check, they had a reasonable suspicion that Ramirez was committing a crime. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment and to Amend ("Defs.' Mem.") (Doc. 53), at 6–8 (making no arguments that the there continued to be reasonable suspicion Ramirez was committing a crime after nothing suspicious was uncovered during his frisk).

9

135 S. Ct. 1609, 1614 (2015) (internal citations and quotations omitted). During a stop, an officer's permissible activities include "determining whether to issue a traffic ticket . . ., checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 1615. But while that type of conduct, which promotes "highway and officer safety," is permissible regardless of the duration of the traffic stop, police conduct that investigates "crime in general or drug trafficking in particular" must be supported by "reasonable suspicion of criminal activity" when it prolongs the stop. *Id.* at 1616.

Ramirez argues that because the warrant check occurred after the frisk was complete, "the investigation of the traffic infraction had ended, and there was no reason to believe Plaintiff had committed or was committing any crime." Pl.'s Mem. at 6. Defendants argue that "running a routine warrant search is considered part of the officers' safety precautions and not a 'dragnet' for potential criminal activity." Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment and to Amend ("Defs.' Mem.") (Doc. 53), at 4. The Court disagrees. Even if running a warrant check on a passenger may, in some circumstances, be considered a safety precaution,[11] here, Ramirez—a mere passenger in a taxi alleged to have been involved in a traffic infraction—had already been ordered out of the car and had been subjected to a frisk which returned nothing unlawful or suspicious. Defendants do not explain how, in that circumstance, there could be any lingering threat to officer safety, and the Court cannot see how running a warrant check on a

---

[11] Based on this Court's research, most other courts dealing with passenger warrant checks in the wake of *Rodriguez* have found them to be constitutional based on the fact that the warrant check did not prolong the stop. *See, e.g.*, *State v. Martinez*, 2017 UT 43 ¶ 23, 2017 WL 3262125 (Utah Aug. 2, 2017) ("We do not believe that Trooper Horne's five-second extension unreasonably prolonged the length of time of this traffic stop."); *United States v. Hill*, 852 F.3d 377, 382 (4th Cir. 2017) (finding a passenger warrant check constitutional because the "duration of the traffic stop was not extended for any purpose beyond the time reasonably required to complete the stop"). Here, there is no dispute that the investigation related to the traffic stop had been completed.

passenger after it is clear that he does not possess weapons or contraband could be considered anything but an "endeavor to detect crime in general." *Rodriguez*, 135 S. Ct. at 1616.

Further, police officers have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). In each case, the question is "whether a defendant had a realistic chance to intercede," which turns on "such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations. Among these considerations, of course, the assault's duration will always be relevant and will frequently assume great importance." *Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016). Here, Ramirez put forward evidence that while Officer Burke conducted the warrant check, both other officers knew what was happening and did not intervene. Officer Powell asked Ramirez for his identification and then handed it to Officer Burke, who returned to the officers' car to conduct the warrant check while Officer Powell and Sergeant Gutierrez remained standing next to Ramirez. Pl.'s Add'l 56.1 ¶¶ 50–54, 57. Sergeant Gutierrez testified in his deposition that he knew Officer Burke was conducting a warrant check. *Id.* ¶ 55. The warrant check lasted for approximately five minutes. *Id.* ¶ 58. In other words, there was ample opportunity for either Sergeant Gutierrez or Officer Powell to stop the warrant check.[12]

The Court therefore GRANTS summary judgment in favor of Ramirez for his illegal search and seizure and failure to intervene claims to the extent that they relate to the warrant check and DENIES Defendants' motion for summary judgment for the same claims.

---

[12] For their part, Defendants argue that Ramirez's failure to intervene claim should be denied because the warrant check "occurred in a matter of seconds, meaning that Officer Burke and Sergeant Gutierrez did not have a realistic opportunity to intercede." Defs.' Mem. at 13. Their argument does not hold water, because they admitted that "the process of performing the warrant search took about five minutes, possibly more." Defs.' Reply 56.1 ¶ 58.

Ramirez also seeks to amend his complaint to include a claim for *Monnell* liability based on the alleged policy or procedure of the City of New York to unconstitutionally prolong traffic stops by running warrant checks on the occupants. *See* Doc. 46.[13] Defendants argue that Ramirez's motion should be dismissed because he "merely states conclusory allegations of municipal policy and practice and fails to allege facts from which the court may infer an actual causal link between the custom or policy and alleged constitutional violation." Defs.' Mem. at 3. But here, at least in his supporting papers, Ramirez has done more than make conclusory allegations; Ramirez also points to the testimony of Officer Powell that conducting warrant searches on every individual stopped was "just procedure." Reply Memorandum of Law in Support of Plaintiff's Motion to Amendment ("Pl.'s Reply Amendment Mem.") (Doc. 60), at 3.[14] Although this evidence would plainly be insufficient to support a judgment in favor of plaintiff on a claim of *Monell* liability, it is not "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn*, 200 F.3d at 71. Therefore, the Court therefore GRANTS Ramirez's motion for leave to file an amended complaint.

### B. Plaintiff's Remaining Search and Seizure Claims

Defendants move for summary judgment on Ramirez's remaining search and seizure claims, arguing that the officers are entitled to qualified immunity because "reasonable officers could disagree [about] whether there was reasonable suspicion to stop and search" Ramirez given: (1) the time at which the stop occurred; (2) the fact that Ramirez refused to put his hands down and refused to open the door of the cab; (3) the fact that Ramirez was sweating profusely

---

[13] Ramirez refers to the proposed amended complaint as a "Second Amended Complaint." However, Ramirez never filed an amended complaint.

[14] In his deposition, Powell was asked of there was a reason the officers would have run a warrant check on Ramirez. Powell responded: "Yes. We stopped him. First of all, we stopped the vehicle. The fact that I took him out of the vehicle to frisk him, um, just to make sure, you know, he did not have any warrants and stuff like that. So, it's just procedure." *See* Powell Dep. at 143:2–11.

and his explanation for his appearance; and (4) the fact that he was holding a vaporizer pen in his hand. Defs.' Mem. at 8. Ramirez argues that these facts are cherry-picked from the record and that none of those facts would lead a reasonable officer to suspect that Ramirez was armed, as required to conduct a frisk. Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment ("Pl.'s Opp. Mem.") (Doc. 64), at 6.

"Reasonable suspicion requires more than an inarticulate hunch. The suspicion must derive from specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *United States v. Santillan*, -- F.3d--, 2018 WL 4038032, at *4 (2d Cir. Aug. 24, 2018) (internal citations and quotation marks omitted). A court weighing a detaining officer's decision to detain an individual should "view the totality of the circumstances through the eyes of a reasonable and cautious officer on the scene, whose insights are necessarily guided by the officer's experience and training." *Id.*

Preliminarily, the Court notes that it is at a loss to see how two of the Defendants' proffered bases to stop and search Ramirez, even in combination with the others, could possibly contribute to a reasonable inference that wrongdoing was afoot. First, it is completely unremarkable today—and it was in October 2015—for a New Yorker to be headed home in a taxi at 2:00 a.m. Second, the fact that Ramirez was holding a vaporizer pen is no more incriminating than if he had been holding a cigarette or a lighter.

To be sure, the fact that Ramirez was uncooperative and sweating profusely provides some support for Defendants' argument that reasonable officers could disagree about whether it was reasonable to detain Ramirez. *Cf. Santillan*, 2018 WL 4038032, at *5–6 (finding that although it was a "close case," the defendant's nervous appearance and inability to convincingly

13

explain where he had come from supported a reasonable suspicion finding). But those factors must be weighed against other factors in this case, such as the fact that Ramirez repeatedly offered to show the officers his identification in order to prove that he lived in the building where the taxi was stopped and therefore had a legitimate basis to be in the neighborhood. Pl.'s Add'l 56.1 ¶ 26. In addition, Ramirez kept his hands raised, in an apparent effort to demonstrate to the officers that he posed no threat. *Id.* ¶ 32. The officers disclaimed that there was any smell of marijuana in the taxi, *id.* ¶ 30, and Officer Powell did not suspect that Ramirez possessed any drugs, *id.* ¶ 29.[15] Based on these facts, the Court concludes that Defendants have not proven that they are entitled to judgment as a matter of law on the issue of qualified immunity, and their motion for summary judgment with respect to the search and seizure of Ramirez is DENIED.[16]

### C. Excessive Force

Defendants move for summary judgment on Ramirez's excessive force claim because the only arguable instance of force alleged in Ramirez's complaint was that Officer Powell pushed his chest into Ramirez's and backed Ramirez against the taxi. *See* Compl. ¶ 33; Defs.' 56.1 ¶ 7. In opposition Ramirez stated, for the first time before this Court, that his theory of excessive

---

[15] Ramirez argues that he is entitled to an adverse inference based on Defendants' inability to produce the form UF-250. Pl.'s Opp. Mem. at 7–8. Before a court may determine that an adverse inference is appropriate, the moving party must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–12 (2d Cir. 2001)). In exercising its discretion under Rule 37, a court should consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011) (quoting *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Ramirez has made no arguments about the culpability of Defendants in failing to produce the form. Therefore, at this time, an adverse inference based on the missing UF-250 is not appropriate.

[16] Defendants have certainly failed to meet their burden with respect to frisking Ramirez. It is beyond cavil that, "to proceed from a stop to a frisk," an officer must "reasonably suspect that the person stopped is armed and dangerous." *Johnson*, 555 U.S. at 326–27. Yet Defendants fail entirely to address this requirement, and put forward no evidence that a reasonable officer would suspect that Ramirez was armed and dangerous. *See generally* Defs.' Mem. at 6–8, Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Reply Mem.") (Doc. 69), at 2–3.

force is that Officer Powell's frisk of Ramirez constituted a "sexual groping" and a battery. Pl.'s Opp. Mem. at 11. Ramirez's counsel explained that he shared this theory with Defendants' counsel on October 9, 2017 and that Defendants' pre-motion conference letter regarding the instant motion did not include mention of moving for judgment on the excessive force claim. *See* Joubin Decl. Ex. 10 (October 9, 2017 e-mail); Doc. 42 (Defendants' pre-motion conference letter). The Court will assume that had Ramirez been aware that Defendants intended to move for summary judgment on this issue, he would have sought leave to amend his allegations to align with his current theory of excessive force. *Cf.* Pl.'s Opp. Mem. at 13 (stating that Ramirez would have notified the Court of changes to its case theory with respect to the sexual nature of his frisk had he known Defendants would move on the claim).

According to Ramirez's deposition, when Officer Powell frisked him, he did not search common areas in which individuals may store weapons or contraband—he did not, for example, search Ramirez's pockets or socks. *See* Joubin Decl. Ex. 2 ("Ramirez Dep.") at 78:11–25. Instead, Officer Powell "went straight for [his] chest, [his] stomach area, and [his] groin." *Id.* Ramirez stated that although the interaction occurred while he was clothed, he felt groped rather than what he would expect to feel during a routine "pat down." *Id.* at 78:3–10.

Construing the evidence in the light most favorable to Ramirez, the Court finds that Defendants are entitled to summary judgment on the excessive force claim. "Courts in the Second Circuit have consistently held that . . . brief contact with an arrestee's breasts or genital area during a pat-down, without more, is insufficient to violate the Fourth Amendment." *Scalpi v. Amorim*, No. 14 Civ. 2126 (KMK), 2018 WL 1606002, at 18–19 (S.D.N.Y. Mar. 29, 2018) (collecting cases); *see also Wright v. City of Waterbury*, No. 07 Civ. 306 (CFD), 2011 WL 1106217, at *7 (D. Conn. Mar. 23, 2011) (finding that even if an officer's "palm cupped [the

plaintiff's] groin" during a frisk, that conduct "does not rise to the level of unreasonableness required for a Fourth Amendment violation"). Although the Court does not doubt Ramirez's discomfort during and after the search, the constitution does not prohibit the type of "brief contact" at issue in this dispute. The Court, therefore, GRANTS Defendants' motion for summary judgment on Ramirez's excessive force claim and his claim for failure to intervene with respect to excessive force.[17]

### D.  First Amendment Retaliation

Next, Defendants argue that they are entitled to summary judgment on Ramirez's claim for first amendment retaliation because he has not demonstrated "that his detention or frisk were motivated by constitutionally protected free speech, as opposed to other factors." Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Reply Mem.") (Doc. 69), at 4.[18] They also argue that he has not shown that his First Amendment rights were chilled by Defendants' actions. Defs.' Mem. at 10. In order to state a claim for retaliation, a plaintiff must prove: (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) the defendants' actions caused him some injury. *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

---

[17] In his opposition, Ramirez requests the ability to amend his complaint to add a claim for substantive due process on the basis of his frisk. Pl.'s Opp. Mem. 13–14. However, for the same reasons stated above, the Court does not find that the conduct rises to the level of egregiousness or outrageousness needed to state a substantive due process claim and therefore denies the request. *See Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) ("For a substantive due process claim to survive a Rule 12(b)(6) dismissal claim, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (internal quotation marks omitted)).

[18] Defendants also argue in their opening and reply brief that Ramirez's retaliation claim fails because his search and seizure were supported by reasonable suspicion. *See* Defs.' Mem. at 9; Defs.' Reply Mem. at 3. Because the Court finds that the issues of Defendants' qualified immunity and the existence of reasonable suspicion should be left to a jury, it does not consider that argument at this juncture.

In opposition, Ramirez points out the fact that he attempted to assert his right not to be frisked, was told to "turn the [expletive] around," and then was searched in a manner that Ramirez found to be humiliating and overly sexual. Pl.'s Opp. Mem. at 10–11. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Gogol v. City of New York*, No. 15 Civ. 5703 (ER), 2017 WL 3449352, at *9 (S.D.N.Y. Aug. 10, 2017) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). In *Gogol*, this Court denied summary judgment on a First Amendment retaliation claim when the evidence suggested that a plaintiff was followed and ultimately arrested by a police officer shortly after she chided him by saying "courtesy and respect" after he refused to answer her questions concerning an ongoing investigation. *Id.* Here, after detaining Ramirez for an extended period of time and conducting both a frisk and a warrant search, Officer Powell told Ramirez, "Next time stop disrespecting us and next time you won't get treated like that." Pl.'s Add'l 56.1 ¶ 63. Officer Powell's statement at the end of the encounter, coupled with the officers' strong recollections that Ramirez's behavior was disrespectful and combative but not particularly threatening, do support a reasonable inference that the officers' actions could have been "motivated by or substantially caused by" Ramirez's purportedly disrespectful speech and conduct. *See* Gutierrez Dep. at 81:11–14, 94:24–25; Powell Dep. at 109:22–23, 110:5–24.

Further, although Defendants argue that Ramirez has put forward no evidence of injury as a result of Defendants' actions, the Court finds that the prolonged detention, humiliating frisk, and unnecessary warrant check could constitute injury resulting from Defendants' actions. The Court concludes that there is a genuine issue of material fact with respect to this claim—namely, whether Defendants' actions were motivated by a reasonable suspicion of wrongdoing, by

17

aggravation due to Ramirez's behavior and statements, or for another reason entirely. Summary judgment is therefore DENIED.

However, while Ramirez initially brought a claim for *Monell* liability based on a failure to train officers not to violate the First Amendment rights of officers, Ramirez concedes that the claim is "not supported by sufficient record evidence." Pl.'s Opp. Mem. at 15. The Court therefore GRANTS Defendants' motion for summary judgment on Ramirez's current claim for *Monell* liability.

E.  **Deprivation of Federal Civil Rights**

Neither party provides any argument regarding Ramirez's first claim for "deprivation of federal civil rights." That claim alleges that the officers' actions "deprived [Ramirez] of the rights guaranteed to citizens of the United States by the First and Fourth Amendment to the Constitution." *See* Compl. ¶¶ 62–66. Not only is this claim duplicative of Ramirez's later claims for specific violations of his First and Fourth Amendment rights, "such general allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give fair notice of what the claim is and the grounds upon which it rests." *Washington v. City of New York*, 05 Civ. 8884 (LAP), 2009 WL 1585947, at *10 (S.D.N.Y. June 5, 2009) (internal quotation marks omitted). The Court therefore GRANTS summary judgment to Defendants on this claim. *Id.*; *see also Morgan v. City of New York*, No. 15 Civ. 3899 (SJ), 2017 WL 6561161, at *3 (E.D.N.Y. Dec. 22, 2017) ("Plaintiff cannot proceed on a generalized theory because more specific constitutional provisions provide an explicit source of constitutional protection for his alleged injuries relating to his claimed false arrest and malicious prosecution.").

18

## IV. CONCLUSION

For the reasons set forth above, Ramirez's motions are GRANTED and Defendants' motion is GRANTED in part and DENIED in part. Specifically:

1. Summary judgment is GRANTED to Defendants on Ramirez's claim for deprivation of federal civil rights (Claim 1);

2. Summary judgment is GRANTED to Ramirez on his claim for unlawful search and seizure with respect to the warrant check, and DENIED on the remainder of Ramirez's search and seizure claims (Claims 2 and 3);

3. Summary judgment is DENIED on Ramirez's claim for First Amendment retaliation (Claim 4);

4. Summary judgment is GRANTED to Defendants on Ramirez's claim for excessive force (Claim 6);

5. Summary judgment is GRANTED to Defendants on Ramirez's claim for failure to intervene with respect to the frisk and GRANTED to Ramirez on his claim for failure to intervene with respect to the warrant check (Claim 5);

6. Summary judgment is GRANTED to Defendants on Ramirez's claim for *Monnell* liability with respect to a failure to train (Claim 7); and

7. Ramirez's motion to amend the Complaint to add a cause of action for *Monnell* liability with respect to its policy regarding warrant checks is GRANTED.

The parties are directed to appear for a conference on September 12, 2018 at 3:30 p.m. The Clerk of Court is respectfully directed to terminate the motions, Docs. 43, 46, and 52.

It is SO ORDERED.

Dated: August 31, 2018
New York, New York

Edgardo Ramos, U.S.D.J.